# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMAAL LEWIS,

    Petitioner,

v.                                                                                                    Civil Action No. 5:14cv108
                                                                                                                  (Judge Stamp)

L. J. ODDO, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

       This *pro se* Petition for Writ of Habeas Corpus was filed pursuant to 28 U.S.C. § 2241 by Jamaal Lewis (Petitioner) while he was incarcerated at Hazelton Federal Correctional Institution in Bruceton Mills, West Virginia. Petitioner challenges his military conviction arising out of a general court-martial that took place at Fort Lewis in the state of Washington. Petitioner asserts two grounds for granting relief: first, the military lacked "territorial jurisdiction;" and second, his constitutional rights were violated because "the U.S. Army waived and reinitiated primary jurisdiction AFTER [his] constitutional rights were guaranteed to [him] as a civilian." ECF No. 1 at 5–6. Having examined the pleadings and exhibits, and after considering the parties' arguments, the Court recommends that the Petition be dismissed with prejudice for the following reasons.

### I. PROCEDURAL BACKGROUND

       Petitioner enlisted in the United States Army Reserve on January 25, 2003, in the delayed entry program. ECF No. 18-12 at 2. Petitioner entered active duty on April 29, 2003, and

1

subsequently reported to Fort Lewis, Washington, for his first duty assignment. ECF 18-4 at 2. On September 6, 2005, Petitioner was arrested on post at Fort Lewis by U.S. Army personnel and civilian authorities. Thereafter, he was arraigned by civilian authorities, but he was ultimately turned over to the U.S. Army for trial by court-martial. ECF No. 18-15 at 3.

Petitioner's court-martial began on September 28, 2006, and he was convicted of two specifications[1] of murder, aggravated assault with a firearm, and attempted robbery. ECF No. 18-8 at 2. Petitioner was sentenced on October 19, 2006, to confinement for the length of his natural life with eligibility for parole, reduction to the grade of Private, and a Dishonorable Discharge. Id. On March 7, 2008, Petitioner, by counsel, submitted matters in extenuation and mitigation to the convening authority, which approved his sentence as adjudged. Petitioner did not challenge the court-martial jurisdiction in those matters. ECF No. 18-10. The convening authority approved Petitioner's sentence as adjudged. ECF No. 18-9 at 4.

Petitioner's case was then reviewed by the United States Army Court of Criminal Appeals ("ACCA").[2] Petitioner alleged the following four assignments of error:

> (1) The evidence was factually insufficient to sustain the convictions.
>
> (2) Appellant's right to due process was violated when the trial counsel asked a defense expert whether he found exculpatory evidence and argued to the members that the defense expert failed to find exculpatory evidence and failed to find evidence suggesting

---

[1] Under military law, a specification is similar to an indictment, and it is a plain, concise, and definite statement of the essential facts constituting the offense charged." United States v. Thompson, 59 M.J. 432, 441 (C.A.A.F. 2004).

[2] The ACCA is created pursuant to Art. 66, UCMJ, 10 U.S.C. § 866. The ACCA is required to review each case in which the sentence, as approved, extends to among others, a dishonorable discharge or confinement for one year or more.

2

anyone other than appellant committed the offenses.

(3) The military judge abused her discretion in denying Appellant's motion to sever charges.

(4) The convening authority impermissibly exempted officers of the special branches named in 27-10 in violation of Article 25 (d) (2), UCMJ which requires the convening authority to select court-martial members based on age, education, training, experience, length of service and judicial temperament.

Petitioner did not challenge the jurisdiction of the court-martial. ECF No. 18-7 at 2–132.

On September 22, 2010, Petitioner submitted his petition for grant of review to the United States Court of Appeals for the Armed Forces (CAAF).[3] ECF No. 18-5 at 28 – 53. In the petition, he raised the following statement of error:

(1). Whether appellant's right to due process was violated when the trial counsel asked a defense expert whether he found exculpatory evidence, and argued to the members that the defense expert failed to find exculpatory evidence and failed to find evidence suggesting anyone other than appellant committed the offenses.

Id. at 32.

On March 8, 2011, the CAAF affirmed the ACCA's opinion. ECF No. 18-5 at 2. Finally, on July 25, 2011, Petitioner was issued his Dishonorable Discharge Form 214 and was released from active duty. ECF No. 18-2 at 2.

Petitioner then filed the instant Petition with this Court on August 15, 2014. ECF No. 1. On March 4, 2015, the Respondent, by counsel, filed his Motion to Dismiss for Lack of Jurisdiction and

---

[3]The CAAF is created by Article 67,UCMJ, 10 U.S.C. § 867, and is composed of civilian judges, and is the final appellate court for cases arising out of military jurisprudence, with the notable exception of those cases in which the Supreme Court of the United States has discretion under 28 U.S.C. § 1259 to review.

Failure to State a Claim.  ECF No. 17.  On March 23, 2015, Petitioner filed his own Motion for Summary Judgment and Response to Respondent's Motion.  ECF No. 25.  On April 13, 2015, the Respondent responded in opposition to Petitioner's Motion for Summary Judgment.  ECF No. 26.

## II. Grounds Alleged and Claims for Relief

Petitioner raises two grounds in his Petition; although different, both grounds challenge the military's jurisdiction over Petitioner.  First, he asserts that the U.S. Army lacked "territorial jurisdiction."  ECF No. 1 at 5.  Petitioner claims that because the "U.S. Army tried a case outside of their territorial jurisdiction, [it] deprived [him] of [his] Article III and sixth amendment rights . . . ."  Id.  Second, Petitioner alleges that his constitutional rights were violated because "the U.S. Army waived and reinitiated primary jurisdiction" after he had been arrested and arraigned by local police.  Id. at 6.

Petitioner requests this Court order an evidentiary hearing and grant Petitioner a new trial, or he prays this Court will vacate his conviction and order his military discharge be changed from dishonorable to honorable.

## III. Legal Standards

### A. Review of military convictions by federal courts

"It is the limited function of the civil courts to determine whether the military have given fair consideration to each of [the Petitioner's] claims." Burns v. Wilson, 346 U.S. 137, 144 (1953).  This Court's review is limited because "[t]he military has its own independent criminal justice system governed by the Uniform Code of Military Justice" (UCMJ).  Lips v. Commandant, U.S. Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir. 1993) (citing 10 U.S.C. §§ 801–940).  The UCMJ is "all-inclusive and provides, *inter alia*, for courts-martial, appellate review, and limited

4

certiorari review by the United States Supreme Court." Id. Accordingly, when this Court reviews court-martial convictions, special considerations are involved "[b]ecause of the independence of the military court system." Id. "[W]hen a military decision has dealt fully and fairly with an allegation raised in that application , it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." Burns, 346 U.S. at 142.

**B. Exhaustion and waiver**

This Court will not entertain a habeas petition by a military prisoner "unless all available military remedies have been exhausted." Khan v. Hart, 943 F.2d 1261, 1263 (10th Cir. 1991) (quoting Schlesinger v. Councilman, 420 U.S. 738 (1975)). "This requires the petitioner to exhaust not just military *court* remedies but *administrative* ones as well." Banks v. U.S., No. 10–3014, 2011 WL 3185008, at **2 (10th Cir. July 27, 2011). Furthermore, "failure to exhaust available military remedies on *any* claim generally requires a civilian court to dismiss without prejudice the petition in its *entirety*; until the petitioner takes advantage of all modes of relief available in the military system, civilian review must await another day." Id. In other words, "if a ground for relief was not raised in the military courts, then the district court *must* deem that ground waived." Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir. 2003) (emphasis added).

Moreover, should a petitioner be procedurally barred from taking advantage of a previously available mode of relief in the military system, such as raising a claim on appeal to one of the military appellate courts, then he has waived that claim or issue. Waiver "can operate to bar a military prisoner from ever raising a claim in a civilian court that he once could have presented to military officials but no longer may." Id.; see Lips, 997 F.2d at 812; Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir. 2003).

**C. Military jurisdiction over service members**

The Supreme Court of the United States has held—for most of this country's history—that the military has the authority to try, convict, and punish its service members pursuant to the UCMJ, regardless of where an alleged crime occurred or its relation to military service. "In an unbroken line of decisions from 1866 to 1960, [the Supreme Court] interpreted the Constitution as conditioning the proper exercise of court-martial jurisdiction over an offense on one factor: the military status of the accused." Solorio v. U.S., 483 U.S. 435, 439 (1987) (citations omitted). However, in 1969, the Supreme Court "departed from the military status test and announced the 'new constitutional principle' that a military tribunal may not try a serviceman charged with a crime that has no service connection." Id. at 440 (referring to the Courts earlier decision in O'Callahan v. Parker, 395 U.S. 258 (1969)).

In 1987, the Solorio Court explicitly overruled O 'Callahan, returning to the standard that withstood a century of use and scrutiny. In its analysis, the Supreme Court explained, "[t]he Constitution grants to Congress the power '[t]o make Rules for the Government and Regulation of the land and naval Forces.'" Solorio, 483 at 438 (quoting U.S. Const., Art. I, § 8, cl. 14). The Court held that "we should read Clause 14 in accord with the plain meaning of its language as we did in the many years before O'Callahan was decided." Id. at 450. The Court further noted that the O'Callahan Court's "novel approach to court-martial jurisdiction must bow 'to the lessons of experience and the force of better reasoning.'" Id. (quoting Burnett v. Coronado Oil & Gas Co., 285 U.S. 393, 406–08 (1932)). Finally, the Court's holding "that the requirements of the Constitution are not violated where, as here, a court-martial is convened to try a serviceman who was a member of the Armed Services at the time of the offense charged" remains controlling precedent on this

issue. Id. at 450–51.

IV. DISCUSSION

**A. The Petition should be dismissed for failing to exhaust Petitioner's stated grounds**

The law is clear that "if a ground for relief was not raised in the military courts, then the district court *must* deem that ground waived." Roberts, 321 F.3d at 995 (emphasis added). Item thirteen in Petitioner's Petition for Habeas Corpus asks whether all of the grounds raised in the Petition were presented to another court. ECF No. 1 at 7. In response to this question, the Petitioner wrote, "No, neither of these issues were presented to another court." Id. In fact, Petitioner never raised any jurisdictional issues with the convening authority or in his subsequent appeals to ACCA or CAAF. Because Petitioner previously failed to raise the issues in his Petition during any of the military proceedings, this Court appears to be left with no choice but to dismiss the Petition, as the Petitioner must be deemed to have waived these grounds for failing to exhaust the same.[4]

**B. The Petition should be dismissed because it fails on the merits**

Petitioner raises two grounds for relief in his Petition. Both grounds attack whether the military had proper jurisdiction to try and convict Petitioner, who asserts that his constitutional rights have been violated as a result.

> **1.** *"Territorial jurisdiction" is not a factor in determining whether the military had jurisdiction to convict Petitioner*

Petitioner argues that the "prosecution must always prove territorial jurisdiction . . . to sustain [a] conviction . . . and that territorial jurisdiction and venue are 'essential elements' of any

---

[4]The undersigned acknowledges that an exception to such waiver exists if a petitioner can demonstrate cause and actual prejudice for the default. Roberts, 321 F.3d at 995. However, the exception is not available in this case. Petitioner has not alleged any cause for his default, let alone any actual prejudice.

7

offense . . . ." Petitioner further asserts that because the crimes he was convicted of committing occurred on privately owned state land the U.S. Army lacked "territorial jurisdiction." As a result, Petitioner then concludes that his convictions are unconstitutional; however, this argument is misplaced and without merit.

In Solorio, the Supreme Court of the United States considered "whether the jurisdiction of a court-martial convened pursuant to the [UCMJ] to try a member of the Armed Forces depends on the 'service connection' of the offense charged." 483 U.S. at 436. Richard Solorio, the petitioner in the case, was on active duty with the Coast Guard and had been stationed in Alaska. Id. at 436–37. The Supreme Court noted, "[t]here is no 'base' or 'post' where Coast Guard personnel live and work in Juneau. Consequently, nearly all Coast Guard military personnel reside in the civilian community. Petitioner's Alaska offenses were committed in his privately owned home . . . ." Although the crimes occurred in Solorio's private home within the state of Alaska, the Supreme Court still upheld his military conviction. See Solorio, 483 U.S. 435.

Ultimately, the Supreme Court concluded, "[w]e therefore hold that the requirements of the Constitution are not violated where, as here, a court-martial is convened to try a serviceman who was a member of the Armed Services at the time of the offense charged." Id. at 450–51. In the instant case, the record is clear, and Petitioner has submitted no evidence to the contrary, that he was a member of the Armed Services at the time he was charged and convicted. The Supreme Court articulated the standard in Solorio, and there is no territorial jurisdiction requirement. Petitioner's constitutional rights were not violated as a result of his military convictions. Therefore, the Court should deny this ground.

### 2. *The Petitioner's constitutional rights were not violated when the military took over his case after he was arraigned in state court*

Petitioner's second ground for relief centers around a contention that he "<u>was</u> arraigned, so jeopardy <u>had</u> attached and he should not have been court-martialed." ECF No. 1 at 17. This argument is without merit.

First, the Supreme Court of the United States has noted that in considering cases in which "the Double Jeopardy Clause has been invoked, the courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" <u>Serfass v. United States</u>, 420 U.S. 377, 288 (1975). The Court further explained that "jeopardy attaches when a jury is empaneled and sworn" in a jury trial. <u>Id.</u> (citations omitted). "In a nonjury trial, jeopardy attaches when the court begins to hear evidence." <u>Id.</u> (citations omitted). Further, the Supreme Court "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury of a judge." <u>Id.</u> (quoting <u>United States v. Jorn</u>, 400 U.S. 470, 479 (1971)).

Petitioner has neither submitted any evidence nor contended in any filing that a jury was empaneled and sworn or that a judge began to hear evidence in state court before the military took over his case. Absent any such evidence, it is clear that Jeopardy never attached, and Petitioner's constitutional rights, under the double jeopardy doctrine, have not been violated. Accordingly, the Court should deny this ground.

Second, to the extent that Petitioner's argument under this ground does not rely on the position that jeopardy attached, it should still be denied because it is without merit. Assuming, *arguendo*, either that double jeopardy does apply or that "the U.S. Army waived and reinstated primary jurisdiction AFTER [Petitioner's] constitutional rights were guaranteed to [him] as a

9

civilian of the United States[,]" the Petition should still fail.

In Heath, the Supreme Court upheld Heath's murder conviction–and death sentence–even though he had already been convicted in Georgia for the same crime, receiving a life sentence. Heath v. Alabama, 474 U.S. 82 (1985). Heath argued that the Double Jeopardy Clause of the Fifth Amendment barred Alabama from trying him after Georgia had already convicted him of the same murder. Id. at 434. The Court disagreed, and explained how dual sovereignty not only applied, but also invalidated Heath's argument:

> The sole remaining question upon which we granted certiorari is whether the dual sovereignty doctrine permits successive prosecutions under the laws of different States which otherwise would be held to "subject [the defendant] for the same offence to be twice put in jeopardy." U.S. Const., Amdt. 5. Although we have not previously so held, we believe the answer to this query is inescapable. The dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause.

Id. at 437.

Similarly, the doctrine of Dual Sovereignty could be applied to the case *sub judice*. Again, assuming *arguendo* that jeopardy had attached to Petitioner at his arraignment in state court, it would be of no consequence. Under the Heath Court's explanation of the doctrine of Dual Sovereignty, both the military, as an arm of the federal government, and the state of Washington could convict Petitioner of the same crime(s) arising from the same set of facts or circumstances without running afoul of the Constitution. Thus, the und is left to conclude that under any reading or interpretation of the arguments put forward in this ground, it should be denied.

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss [ECF No. 17] be **GRANTED**; Petitioner's Motion for Summary Judgment [ECF No. 25] be

**DENIED**; and Petitioner's §2241 Petition for Writ of Habeas Corpus [ECF No. 1] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, at their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

Dated: December 22, 2015.

/s Robert W. Trumble
ROBERT W. TRUMBLE
U.S. MAGISTRATE JUDGE